**WILCOX, et, Plaintiffs, v. WYNN, Defendant.**

Municipal Court, Dayton, Ohio.

Nos. 89465-89466.   Decided July 8, 1948.

J. H. Patricoff, Dayton, for plaintiffs.

A. T. Eaton, Dayton, for defendant.

## OPINION

By McBRIDE, J:

Eugene E. Wilcox and Jack Shade filed separate replevin actions for the recovery of possession of their Terminal Leave Bonds allegedly wrongfully held by the defendant, Herby Wynn. The bond of Jack Shade was for the face value of $275.00 and Eugene E. Wilcox's for $100.00.

The defendant admitted possession of the bonds and for his counter-claim alleged that on August 4, 1947, the two plaintiffs purchased a 1935 Oldsmobile, "as is", for $409.35 and paid cash $34.35, leaving a balance due of $375.00; that Jack Shade executed a note evidencing $275.00 and Eugene E. Wilcox executed a similar note evidencing $100.00 of the balance. These notes corresponded to the amounts shown on the face of the two Terminal Leave Bonds which the plaintiffs voluntarily delivered to the defendant to secure payment of the indebtedness. The defendant asked for money judgment against the plaintiffs for the amount due on the respective notes.

The plaintiffs, by way of reply, alleged that the defendant obtained possession of the Terminal Leave Bonds by fraud and misrepresentation. No objection was made to the form of the reply.

The record indicates that on August 4, 1947, the plaintiffs purchased the vehicle in question without warranty as to its condition, paid the deposit and executed the notes as alleged and voluntarily delivered to the defendant, the Terminal Leave Bonds in question. At the trial, the defendant admitted possession of the bonds. Four days after the purchase of the auto, the plaintiffs mortgaged the car to Maxwell Finance Company, paid one monthly installment on Maxwell's mortgage and several weeks thereafter, attempted to deliver the car to the defendant at a lot where the defendant was no longer doing business. The plaintiffs abandoned the car on the used car lot, formerly operated by the defendant, and the car was thereafter re-possessed by the Finance Company. The car was examined by several parties for the defendant and found to be in a seriously damaged condition and missing many parts.

At the outset, we may dispose of the plaintiff's allegation of fraud in the reply. The evidence fails to support the existence of any fraud in the sale of the automobile to the plaintiffs or in the delivery of the Terminal Leave Bonds to the defendant. The evidence clearly substantiates the defendant's cross-petition that the plaintiff, Eugene E. Wilcox, is honestly indebted to the defendant in the amount of $100.00 and that

Jack Shade is honestly indebted to the defendant in the amount of $275.00.

The remaining question relates to the voluntary delivery of the Terminal Leave Bonds to secure the unpaid balance of :$375.00. Under the circumstances of this case, are the plaintiffs entitled to re-possession of their bonds?

Section 6 (a) (2) of the Armed Forces Leave Act of 1946 provides in part:

"* * *. Except as provided in subsection (d), such bonds 'shall be non-negotiable and shall not be transferable by sale, exchange, assignment, pledge, hypothecation, or otherwise. * * *".

Subsection (d) provides for the assignment of the bonds in payment of premiums or policy loans on national service life insurance policies.

Section 7 of the Act provides:

"All amounts paid or payable under Section 6 of this Act, in cash, bonds, or both, shall not be assignable except as provided in subsection (d) of such section, shall be exempt from claims of creditors, including any claim of the United States, and shall not be subject to attachment, levy, or seizure by or under any **legal or equitable process whatever.** * * *"

The following statement appears on the bonds:

"This bond is non-negotiable and is not assignable except to the Administrator of Veterans Affairs when the proceeds are to be used in payment of premiums, loans and interest thereon, or reserve on United States Government Life or National Service Life Insurance. It may not be pledged or hypothecated in any manner, is exempt from the claims of creditors; and is not subject to attachment, levy or seizure by or under any legal or equitable process whatever. It is payable only to the owner named on the face hereof (or his legally appointed guardian) except in case of his death, in which case payment will be made to his successors (as defined in said Armed Forces Leave Act of 1946), whether before, at, or after maturity, upon proper application to a Federal Reserve Bank or to the Treasury Department, Washington. Interest ceases upon maturity or on the last day of the month in which payment of the bond is made, whichever may be earlier. This bond, (except interest hereon) is exempt from taxation."

These Armed Forces Leave Bonds were issued pursuant to the Armed Forces Leave Act of 1946. Pursuant to the authority contained in the Acts of Congress authorizing the bonds, the

Treasury Department issued regulations, two of which are material to this case.

"324.4. Transfer and pledge.—The bonds are nontransferable by sale, exchange, assignment, pledge, hypothecation or otherwise, except that they may be assigned by the owner to the Administrator of Veterans' Affairs for redemption by such Administrator, for the purpose of paying premiums or the difference in reserve in case of conversion to insurance on another plan or a policy loan made prior to July 31, 1946, on a United States Government life insurance policy or a national service life insurance policy under such regulations as may be prescribed by the Administrator of Veterans' Affairs. No claims by attempted transferees or by persons loaning money on the security of the bonds will be recognized."

"324.5. Claims of creditors.—By the terms of the Act the bonds are exempt from claims of creditors, including any claim of the United States, and shall not be subject to attachment, levy, or seizure by or under any legal or equitable process whatever. Accordingly, no claims of creditors, assignees for the benefit of creditors, trustees or receivers in bankruptcy or equity will be recognized, and no payment of the bonds to any such persons will be made, either during the lifetime of the person whose name is inscribed on the bonds or after his death."

While we have not been referred to any decision relating to Terminal Leave Bonds, these instruments are similar in every way to the Adjusted Service Certificates issued to veterans after World War I. The exemption of such certificates from attachment, levy, or seizure under any legal or equitable process has been generally sustained. 109 ALR 433.

Federal statutes making exempt from seizure or attachment, funds paid to a veteran by way of a pension or compensation have been liberally construed to effect the legislative purpose. **Second National Bank v. Hoblit, 41 Oh Ap 126;** Lee v. City Savings and Loan, 29 ONP (NS) 563. The federal statute clearly protects such payments or the "proceeds" where they are identified and can be traced from legal or equitable action by creditors. Flanders v. Adams (1931), 28 ONP (NS) 542 (Martin, J.).

In the case before us, the original bonds are involved. They indicate the purpose, terms and conditions upon which they were drawn. The veterans, relying upon these terms and conditions, seek to re-possess the bonds without payment or tender of payment for the honest debt for which they were given as security. The equities of the case are not with the veterans. Their conduct resulted in a financial loss to the

defendant and in their present action, the federal statute is being used as a sword, rather than the shield it was intended to be, however, their action is strictly legal in nature and does not permit the application of equitable principles **even if that were possible** in the face of the federal statute and regulations governing such bonds.

It is apparent that certain inequities may very easily result from the conditions of such bonds, however, in interpreting such exemptions, provisions, and conditions as to assignability, we can never lose sight of the unusual purpose and intent to the legislative action.

"By virtue of the special mantle of protection thrown about such funds by the law, the ordinary relationship of debtor and creditor does not arise when such funds are deposited in a bank or building association, and a depository with knowledge of the origin of such funds may be compelled by injunction to pay over such funds to the depositor." Lee v. City Savings and Loan Co., 29 ONP (NS) 563.

In other words, not only are such bonds free from seizure by creditors, but may also be replevined if possible, by the veteran from a third party to whom they were otherwise given for some honest purpose. The defendant argued that his possession of these bonds was by mutual voluntary agreement and consequently his possession cannot be unlawful. We agree with the first part of his statement, but not the second. As stated in the Lee case, page 566:

"The defendant knew the nature of these funds when it received them. It has seized them by apparent legal authority by its refusal to surrender them. Since these funds are exempt from seizure, it is the judgment of this Court that the defendant be and is hereby ordered to return these funds to the plaintiffs."

So in the instant action, the refusal to deliver the bonds back to the veterans was technically wrongful under the federal statute and thereafter every method of legal or equitable procedure became available to the plaintiffs to obtain their bonds.

Accordingly we find in both cases, that the plaintiffs are entitled to possession of the Terminal Leave Bonds in question and on the counter-claims of the defendant we find against the plaintiff, Eugene E. Wilcox, in the amount of $100.00 and against the plaintiff, Jack Shade, in the amount of $275.00.